# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Donovan and Anna Dyrdal,

                Petitioners,        Civ. No. 10-1970 (RHK/LIB)
                                      **MEMORANDUM OPINION
                                        AND ORDER**

v.

Enbridge (U.S.), Inc.,

                Respondent.

Jon Erik Kingstad, Kingstad Law Office, Oakdale, Minnesota, for Petitioners.

Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota, for Respondent.

## INTRODUCTION

This action arises out of a $40,000 arbitration award in favor of Petitioners Donovan and Anna Dyrdal ("the Dyrdals") and against Respondent Enbridge (U.S.), Inc. ("Enbridge"). The Dyrdals have filed a Petition asking the Court to modify the award by (1) adding $8,666 in interest and (2) "correcting" it to clarify that it does not include certain types of damages. They ask the Court to then confirm the so-modified award. Enbridge has responded, *inter alia*, by moving to dismiss for lack of subject-matter jurisdiction. For the reasons that follow, its Motion will be granted.

## BACKGROUND

In 2004, the Dyrdals, farmland owners in Pennington County, Minnesota, commenced arbitration proceedings against Enbridge, a petroleum pipeline company,

claiming that Enbridge's pipelines were damaging their crops. The Dyrdals sought arbitration pursuant to a January 17, 1950 agreement between Enbridge's predecessor and the previous owners of the farmland, which provided that pipelines would be buried such that "they will not interfere with the ordinary cultivation" of the land. (Petition Ex. A.) The pipeline company agreed to pay for "any damage to crops, fences and timber which may arise from laying, maintaining, operating or removing said lines," and the parties agreed to arbitrate any dispute as to the amount of such damages. (Id.)

A three-arbitrator panel was selected, and on November 22, 2004, the Dyrdals filed a Statement of Claim with the panel seeking $102,958 in crop damage and "*additional* damage to [their] soil and land," plus injunctive relief requiring Enbridge to lower one of its pipelines. (Id. Ex. G (emphasis added).) The panel subsequently ruled, however, that only damages to "crops, fences and timber" were within the arbitration clause and any other claim for relief was beyond its jurisdiction. Accordingly, the Dyrdals were ordered to file a new Statement of Claim listing only damages falling within these three categories. (Id. Ex. I.) In response, they filed an Amended Statement of Claim removing any claim for "additional" damages or injunctive relief; yet, the revised claim sought $105,976 (*more* than the initial claim), plus $40,286 in accrued interest. (Id. Ex. J.)

The matter proceeded to a hearing before the panel from November 30 to December 3, 2009. On February 4, 2010, the panel awarded the Dyrdals $40,000. (Id. Ex. L.) The award consists of a single paragraph and provides no reasoning or other basis for its result.

The Dyrdals then moved the panel to clarify that the award concerned crop damages only and excluded the "additional" damages they had sought in their initial Statement of Claim. The panel denied that Motion by Order dated March 24, 2010, stating that the award "requires no such clarification." (Id. Ex. N.) In its Order, however, the panel did, in fact, clarify the scope of its award. Although it recognized that its jurisdiction extended only to damages for crops, fences, and timber, it expressly noted that the Dyrdals had proffered at the arbitration hearing evidence of their "additional" damages (which concerned soil compaction, routing, ditch construction, and other items), all of which "allegedly manifested in crop damage." (Id.) Hence, the panel stated that its award "contemplated all matters underlying and incidental to ultimate damage to crops[,] which damage was reflected in the dollar amounts of crop loss sought by [the] Dyrdals and granted in part and denied in part by the . . . award." (Id.) In other words, the panel appears to have considered in its award the "additional" items for which the Dyrdals initially had sought damages in their November 2004 Statement of Claim.

On May 5, 2010, the Dyrdals filed the instant Petition seeking modification of the award (1) to reflect that it does not include any "additional" damages, which were ostensibly beyond the panel's jurisdiction, and (2) to include pre-arbitration interest of $8,666, which the panel purportedly failed to award. As "corrected," they ask the Court to confirm the award and enter judgment in their favor for $48,666.

The following day, the Court issued an Order (Doc. No. 6) *sua sponte* raising concerns about the existence of subject-matter jurisdiction over the Petition. In particular, the Court noted that the Petition purported to invoke jurisdiction under the

Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "but it has long been recognized that the FAA 'does not create any independent federal-question jurisdiction.' Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983); accord, e.g., Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008)." (Doc. No. 6 at 3.) Stated differently, "even when a petition is brought under the Federal Arbitration Act[,] . . . a petitioner seeking to confirm or vacate an arbitration award in federal court *must establish an independent basis for federal jurisdiction*. Carter v. Health Net of Cal., Inc., 374 F.3d 830, 833 (9th Cir. 2004) (emphasis added)." (Id.) The Petition, however, asserted no federal claim, and the amount requested was less than $75,000, the threshold for diversity jurisdiction.

In light of these concerns, the Court considered ordering the parties to brief whether subject-matter jurisdiction existed. Given the relatively small amount of the arbitration award, however, the Court ordered them instead to conduct an expedited settlement conference. Before that settlement conference occurred, the Dyrdals filed an "Amended Petition/Complaint for Declaratory Judgment and Injunctive Relief." (See Doc. No. 8.) While continuing to seek modification and then confirmation of the arbitration award, they also purported to add in this newly filed document a claim under the Hazardous Liquid Pipeline Safety Act of 1979 ("HLPSA"), Pub. L. No. 96-129, 93 Stat. 1003 (1979).[1] The Dyrdals apparently filed this Amended Petition (with a federal claim) to allay the Court's jurisdictional concerns.

---

[1] This HLPSA has been replaced by the Pipeline Safety Act, Pub. L. No. 103-272, 108 Stat. 745 (1994), codified at 49 U.S.C. § 60101 *et seq.*

4

On June 14, 2010, then-Chief Magistrate Judge Erickson[2] conducted the Court-ordered settlement conference, which proved unsuccessful. As presaged by the Court's May 6, 2010 Order, however, Enbridge has now moved to dismiss for lack of subject-matter jurisdiction. In response, the Dyrdals have conceded that they improperly added their claim under the HLPSA, and they have agreed to dismiss that claim without prejudice. (Pet. Mem. in Opp'n at 3.) Nevertheless, they maintain that diversity jurisdiction exists.

## STANDARD OF REVIEW

Enbridge has moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Under that Rule, two types of jurisdictional challenges exist: "facial" attacks and "factual" attacks. See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Hastings v. Wilson, Civ. No. 05-2566, 2007 WL 333617, at *3 (D. Minn. Feb. 1, 2007) (Kyle, J.), aff'd, 516 F.3d 1055 (8th Cir. 2008). A facial attack, as its name suggests, challenges subject-matter jurisdiction solely from the allegations appearing on the face of the complaint. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In ruling on such a motion, a court must afford the non-moving party the same protections to which it would be entitled under Rule 12(b)(6). Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject-matter jurisdiction exists; a court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards. Id.

---

[2] Chief Magistrate Judge Erickson retired on August 27, 2010.

In either case, the burden of establishing the existence of subject-matter jurisdiction rests with the Dyrdals, as the parties invoking the Court's jurisdiction. E.g., Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009). To do so, they must prove by a preponderance of the evidence that the "amount in controversy" exceeds the $75,000 threshold for diversity jurisdiction. Advance Am., 526 F.3d at 1173. The Petition must be dismissed if it "appears to a legal certainty that the value of the claim is less than the required amount." Id.

## ANALYSIS

It readily appears, to a legal certainty, that the amount sought in this action is less than $75,000. The Dyrdals seek two types of relief. First, they seek to add $8,666 in interest to a $40,000 arbitration award. Yet, interest cannot be counted as part of the amount in controversy for diversity purposes. See 28 U.S.C. § 1332(a) (diversity requires matter in controversy in excess of $75,000, "*exclusive of interest and costs*") (emphasis added). Second, they seek recognition that the award could not include damages to items other than crops, fences, and timber, which "other" damages they valued at $26,000 in arbitration. (See Petition Ex. M.) In other words, they hope to carve-out from the arbitration award a potential future claim against Enbridge worth $26,000. At best, therefore, the relief sought here is worth $66,000 ($40,000 + $26,000), well below the threshold for diversity jurisdiction.[3]

---

[3] At an early stage of the arbitration proceedings, the Dyrdals offered an unspecific allegation that their non-crop/fence/timber damages "total[ed] more than $25,000." (Petition Ex. G ¶ 19.) They provided no further explanation for those damages, however, and later asserted that they amounted to $26,000. (See Petition Ex. M.) They do not appear to quarrel with that valuation

The Dyrdals do not dispute that the amount sought in the instant action falls below $75,000. Nevertheless, they argue that they have satisfied the amount-in-controversy requirement because they demanded more than $75,000 *in the arbitration proceeding*. (Pet. Mem. in Opp'n at 5-9.) And they point out that several federal courts have endorsed this "demand" method of evaluating diversity, which deems the amount sought in the underlying arbitration as controlling in subsequent litigation regarding the arbitration award. See, e.g., Karsner v. Lothian, 532 F.3d 876, 883-84 (D.C. Cir. 2008) (collecting cases).

This approach is not universally followed, however. Some courts have limited the analysis to the amount awarded in the arbitration, irrespective of the amount demanded in that proceeding (the so-called "award" method). See, e.g., Ford v. Hamilton Invs., Inc., 29 F.3d 255, 260 (6th Cir. 1994) (claim seeking to vacate arbitration award of approximately $30,000 insufficient to establish diversity jurisdiction, despite fact that plaintiff had sought more than $50,000 – the erstwhile threshold for diversity – in arbitration). Other courts have taken a "middle" ground between the "demand" method and the "award" method, known as the "remand" method, and looked past the amount awarded in the arbitration, but only if the petitioner also sought to reopen arbitration proceedings. See, e.g., Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1325 (11th Cir. 2005) ("We hold that a federal court has subject matter jurisdiction

---

here. Indeed, in its *sua sponte* Order questioning jurisdiction, the Court pointed out that the Dyrdals had valued such damages at $26,000 (see Doc. No. 6 at 5), and they have nowhere argued to the contrary in connection with the instant Motion (either in their written submissions or at oral argument).

where a party seeking to vacate an arbitration award is also seeking a new arbitration hearing at which he will demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes."). Our Court of Appeals has not yet addressed this issue.

Admittedly, there is some appeal to the "demand" method. In particular, this approach recognizes the "close connection between arbitration and subsequent enforcement proceedings," and analogizes to cases in which a federal lawsuit seeks more than $75,000, but a jury awards less than that amount. Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 328-30 (1st Cir. 2000). Because diversity jurisdiction exists over such a lawsuit, some courts have held that so, too, should jurisdiction exist over a petition to confirm or vacate an award below $75,000, as long as more than that amount had been sought in arbitration. Id. After careful consideration, however, the Court concludes that application of the "demand" method is inappropriate.

The "demand" method ignores the posture in which this action arrived here. The legal dispute between the parties already has been arbitrated. What is *now* before the Court is the *result* of that arbitration, which indisputably involves less than the jurisdictional amount. Indeed, it is somewhat ironic that the entire reason the Dyrdals are here is the arbitration award – which they ask the Court to amend slightly and then confirm – and yet they ask the Court to ignore that award and look back to their arbitration demand to establish jurisdiction. The Court declines to engage in such legal fiction.

Determining whether jurisdiction exists requires the Court to "look[] at what is involved *in the case before [it]*." Advance Am., 526 F.3d at 1172 (emphasis added).

Applying the "demand" method would undermine that principle, because the case *now* before the Court involves less than $75,000. Moreover, doing so would ignore the long-settled rule that "subject-matter jurisdiction 'depends on the state of things at the time . . . the action [is] brought,'" Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473 (2007) (quoting Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824)), and would overlook the principle that arbitration "is independent of judicial proceedings," Bull HN, 229 F.3d at 329. See also Curbelo v. Hita, No. EP-09-CV-133, 2009 WL 2191084, at *4-5 (W.D. Tex. July 22, 2009); Reichle v. Morgan Stanley DW, Inc., 396 F. Supp. 2d 1312, 1315 (M.D. Fla. 2005) (noting, *inter alia*, the "remoteness and distinctiveness of the dispute resolved by the arbitral authority in comparison to the dispute pending before the . . . court" in declining "demand" method and applying "award" method). For these reasons, the Court rejects the Dyrdals' argument that the amount demanded in arbitration is dispositive of the jurisdictional inquiry.

With the "demand" method set aside, it makes no difference whether the "award" method or the "remand" method is applied here – diversity jurisdiction is lacking under either. The Dyrdals do not seek to reopen the arbitration proceedings. When their (legally irrelevant) request for interest is ignored, they seek only exclusion of a claim that, by their own estimation, is worth $26,000, and confirmation of the award. The most they can hope to obtain from their Petition, therefore, is relief worth $66,000. See, e.g., Hansen Beverage Co. v. DSD Distribs., Inc., No. 08cv619, 2008 WL 5233180, at *5-6 (S.D. Cal. Dec. 12, 2008); Wise v. Marriott Int'l, Inc., No. 06 Civ. 11439, 2007 WL 2200704, at *4 (S.D.N.Y. July 30, 2007) (when a petitioner does not seek remand for

9

further arbitration proceedings, the amount in controversy equals "the amount by which the petitioner will benefit if the Court grants the requested relief"); Choice Hotels Int'l, Inc. v. Felizardo, 278 F. Supp. 2d 590, 593-94 (D. Md. 2003). This does not suffice. Accordingly, the Court concludes that it lacks diversity jurisdiction over the Petition.[4]

Two additional points bear mentioning. First, although not dispositive, the Court notes that the Dyrdals apparently recognize the absence of diversity jurisdiction. Notably, they did not invoke diversity jurisdiction in their original Petition. And in response to the Court's Order questioning jurisdiction, they amended their Petition to assert a *federal* claim, thereby implicitly conceding the lack of diversity. Second, the Dyrdals will not be prejudiced by dismissal, as they can attempt to seek in state court the same relief they seek here. See Southland Corp. v. Keating, 465 U.S. 1, 12-15 (1984) (state courts may enforce provisions of the FAA). Indeed, they have expressed their intention to do so in the event subject-matter jurisdiction were found lacking. (See Pet. Mem. in Opp'n at 14.)[5]

---

[4] At oral argument, the Dyrdals asserted that the amount in controversy also should include the value of their request for injunctive relief, which sought to compel Enbridge to lower one of the pipelines on their property. Although such a claim was indeed asserted in the initial Statement of Claim in arbitration, it was removed from the Amended Statement of Claim and clearly was not part of the arbitration award. (See Petition Ex. N (denying Dyrdals' motion for clarification; "The Award denied all claims not granted with the sole exception of the claim for injunctive relief *which was the only part of [the] Dyrdals' entire claim which the panel excluded from the arbitration*.") (emphasis added).) Accordingly, the claim for injunctive relief is not part of the "controversy" before the Court.

[5] The Dyrdals ask the Court to dismiss without prejudice if it is inclined to dismiss for lack of subject-matter jurisdiction. That request is well-taken. See Pinnavaia v. Nat'l Arbitration Forum, Inc., 122 Fed. Appx. 862, 863 (8th Cir. 2004) (noting that Article III prevents federal courts from dismissing cases with prejudice when subject-matter jurisdiction is absent).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Respondent's Motion to Dismiss (Doc. No. 19) is **GRANTED** and the Petition (Doc. No. 1) and Amended Petition (Doc. No. 8) are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 14, 2010

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge